IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 21-200-01/09, 11/12, 14/15-CR-W-RK |
| | ) |
| ANTHONY DOLL, et al., | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION TO DENY
DEFENDANTS' REQUEST FOR *FRANKS* HEARING**

Before the Court is Defendant Anthony Doll's Motion to Suppress Unlawfully Intercepted Wire and Electronic Communications. (Doc. 496) Co-defendants Jose Luis Bravo, Jose Guadalupe Razo, Miguel Tarin-Martinez, Antonio Martinez-Munoz, Eusebio Ramirez-Ceja, Oscar Adrian Molina-Angulo, Rodrigo Manrique Razo, Alejandro Castillo-Ramirez, Ramon Moreno-Hernandez, Jose Luis Lopez-Valdez,[1] Jaime Ramirez-Ceja,[2] and Jose Luis Rodriguez-Valerio all joined this motion. (*See* Docs. 485, 492, 496, 498, 499, 501, 505, 511, 514, 515, 517, 518, 519, 525) Through the motion Defendants request, *inter alia*, a *Franks* hearing on the WT-9 wiretap affidavit. For the following reasons, Defendants' request should be denied.

---

[1] Defendant Lopez-Valdez separately filed a Motion to Suppress Unlawfully Intercepted Wire and Electronic Communications that was substantially identical to that filed by Defendant Doll, and which cited to the exhibits filed in support of Defendant Doll's motion. (*See* Docs. 494, 497) Defendant Lopez-Valdez thereafter filed a motion to join Defendant Doll's Motion to Suppress Unlawfully Intercepted Wire and Electronic Communications. (Doc. 498) Defendant Lopez-Valdez also filed a motion to join Defendant Doll's reply to such motion. (Doc. 566) This Report and Recommendation addresses the substantive motions filed by both Defendant Lopez-Valdez and Defendant Doll.
[2] Defendant Doll's Motion to Suppress Unlawfully Intercepted Wire and Electronic Communications seeks suppression of communications intercepted pursuant to WT-55, WT-7 and WT-9. Defendant Jaime Ramirez-Ceja was not a target to the WT-9 wiretap order, nor were his personal communications intercepted. As a result, Defendant Jaime Ramirez-Ceja does not have standing to request a *Franks* hearing on WT-9.

1

# I. PROCEDURAL BACKGROUND

The Government's investigation of this case involved the use of Title III wiretaps. (Docs. 496, 540) Upon submission, the Court approved the following seven applications and issued orders authorizing the interception of wire and electronic communications:

1. 19-WT-000055-SRB for Target Telephone 1 ("WT-55"), issued on May 28, 2019;
2. 19-WT-000007-DGK for Target Telephones 2 & 3 ("WT-7 Initial"), issued on July 25, 2019;
3. 19-WT-000007-DGK for Target Telephones 2 & 3 ("WT-7 Extension 1"), issued on September 3, 2019;
4. 19-WT-000007-DGK for Target Telephones 2 & 3 ("WT-7 Extension 2"), issued on October 10, 2019;
5. 19-WT-000007-DGK for Target Telephone 2 ("WT-7 Extension 3"), issued on November 12, 2019;
6. 19-WT-000007-DGK for Target Telephones 2 & 6 ("WT-7 Extension 4 and Initial"), issued on December 12, 2019; and
7. 19-WT-000009-DGK for Target Telephones 4 & 5 ("WT-9 Initial"), issued on November 27, 2019.

(Docs. 496, 540; Doc. 497, Def. Exhs. A-G[3])

At issue with respect to Defendants' request for a *Franks* hearing is WT-9 wiretap order. Through the W-9 wiretap application, the Government sought:

> authorization for the interception of wire and electronic communications of Antonio MARTINEZ-Munoz, Jose Guadalupe RAZO, Anthony Edward DOLL, Miguel TARIN-Martinez, Jose Luis BRAVO, Eusebio RAMIREZ-Ceja, Alan CARREON-Espinoza, Oscar Adrian MOLINA-Angulo, Rodrigo MANRIQUE Razo, Victor Manuel CAMERENA-Perez, Eduardo MELENDEZ-Aguirre, Alejandro CASTILLO-Ramirez, Israel MUNOZ-Ramirez, Jose MOLINA-PALAFOX, Carlos CEDENO, Ramon MORENO-Hernandez, Jose Luis RODRIGUEZ-Romo, Veronica LARA, Ubaldo RUIZ-Cisneros, Jose Luis LOPEZ-Valadez, Lorenzo CASTRO-Manzanarez (hereinafter the "Target Subjects"); and others yet unknown, concerning encouraging or inducing an illegal alien to come to, enter or reside in the United States; and alien smuggling, and conspiracy to do the same, in violation of Title 8, Un[i]ted States Code, Section

---

[3] Each of the seven wiretap exhibits bears the Court's file-stamped seal. The Government also cites to Defendant Doll's exhibits (*see* Doc. 540, p. 4), indicating to the Court that there is no dispute as to authenticity. The Court, therefore, takes judicial notice of the seven wiretap exhibits for purposes of this Report and Recommendation.

1324; wire fraud, in violation of Title 18, United States Code, Section 1343; production of false identification documents and conspiracy to do the same, in violation of Title 18, United States Code, Section 1028; conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 371; and money laundering and conspiracy to do the same, in violation of Title 18, United States Code, Sections 1956 and 1957 (hereinafter the "Target Offenses").

(Doc. 497, Def. Exh. G, Application ¶ 2) (footnote omitted) Defendants now seek suppression of all intercepts and evidence derived from the WT-9 wiretap order based on, *inter alia*, alleged false statements contained in paragraphs 18 and 66 of the supporting affidavit. These paragraphs read:

### BACKGROUND

18. In this Affidavit, I seek permission to initiate the interception of wire and electronic communications occurring to and from Target Telephone 4, used by Miguel TARIN-Martinez and Target Telephone 5, used by Anthony Edward DOLL. TARIN-Martinez and DOLL are using the Target Telephones to facilitate the unlawful employment and harboring of undocumented workers in numerous restaurants under the control of Specialty Foods Distributions, Inc. Investigators believe TARIN-Martinez and DOLL are responsible for coordinating the employment and housing of undocumented restaurant workers by way of their positions with Specialty Foods Distribution, Inc. Specialty Foods Distribution, Inc. (and its subsidiary companies including but not limited to Bravos Mexican Grill, LLC, El Charro, Playa Azul, El Charrito, and La Paloma), TARIN-Martinez and DOLL and Target Subjects are using the undocumented workers to operate their restaurant industry which is enabling them to increase corporate profits and avoid paying the proper federal and state withholding requirements.

. . .

### NEED FOR INTERCEPTION OF
### TARGET TELEPHONE 4 AND TARGET TELEPHONE 5

. . .

### COOPERATING INDIVIDUALS

66. This investigation has involved the use of a Cooperating Defendant and two Sources of Information in the preliminary investigation of Bravos Mexican Grill, LLC, of Overland Park, Kansas. These individuals are no longer associated with this restaurant enterprise. Now, due to complexity of this investigation and the extensive network of restaurants in this enterprise, it would be difficult to develop and maintain effective control and communication with multiple cooperating individuals. The development of a cooperating individual as an undocumented alien laborer would provide some information against a manager. However, due to the nature of information being guarded with the corporate officers, this method would produce limited results, TARIN-Martinez and DOLL are known to be directing and or affecting the movements of undocumented alien workers in Tulsa,

> Oklahoma; Skiatook, Oklahoma; Butler, Missouri; Nevada, Missouri; Springfield, Missouri; St. Robert, Missouri; West Plains, Missouri; and Great Bend, Kansas. It is unknown how many other locations TARIN-Martinez and DOLL have affected the placement of or been in command and control of undocumented alien workers while serving in their current positions of controller and accountant at Specialty Foods Distribution, Inc.

(Doc. 497, Def. Exh. G, Affidavit)

## II. LEGAL ANALYSIS

Under *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant may request a hearing to challenge a wiretap order on grounds "that the supporting affidavit contains factual misrepresentations or omissions relevant to the probable cause determination." *United States v. Daigle*, 947 F.3d 1076, 1083 (8th Cir. 2020). *See also United States v. Garcia*, 785 F.2d 214, 222 (8th Cir. 1986) (applying *Franks* to wiretap orders). In order to be entitled to a hearing, a defendant "must show both (1) that the affiant [ ] 'knowingly and intentionally' made false statements or made them in 'reckless disregard for the truth' and (2) if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause." *Daigle*, 947 F.3d at 1083 (quoting *United States v. Arnold*, 735 F.3d 896, 898 (8th Cir. 2013) (citing *Franks*, 438 U.S. at 155-56)) (emphasis added). *See also United States v. Patterson*, 68 F.4th 402, 414 (8th Cir 2023). "Allegations of negligence or innocent mistake will not suffice to demonstrate reckless or deliberate falsehood." *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008). *See also United States v. Mayweather*, 993 F.3d 1035, 1043 (8th Cir. 2021). The showing required to obtain a *Franks* hearing is "not easily met." *Snyder*, 511 F.3d at 816; *see also United States v. Randle*, 39 F.4th 533, 537 (8th Cir. 2022).

In this case, Defendants challenge the assertion in the WT-9 wiretap affidavit that Defendants Tarin and Doll were instigators of the enterprise scheme, in that they "directed . . . the unlawful harboring of aliens for the specific purpose of employment," and were "known to be directing and or affecting the movements of undocumented alien workers" as contained in paragraphs 18 and 66 of the WT-9 affidavit. (Doc. 496, pp. 31-32) Defendants' argument in support of the alleged falsity is based on comparison to the affidavit submitted in support of the initial WT-7 wiretap application, which attributed such roles to Defendants Bravo and Razo, and the lack of explanation for investigators' changed belief. *Compare* Doc. 497, Def. Exh. B, Affidavit ¶¶ 14, 92 *with* Doc. 497, Def. Exh. G, Affidavit ¶¶ 18, 66. The Court is not persuaded by this argument.

As set forth above, the initial WT-7 wiretap order was issued on July 25, 2019. Defendants Tarin and Doll -- not solely Defendants Bravo and Razo -- were also included as "Target Subjects" in the WT-7 affidavit. (Doc. 497, Def. Exh. B, Affidavit ¶ 3) Examination of the WT-9 affidavit, dated November 27, 2019, as a whole reveals the affiant's statements that investigators believed Defendants Tarin and Doll directed the movements of undocumented alien workers was not made in reckless disregard for the truth. To be sure, the WT-9 affidavit contains numerous paragraphs setting forth information obtained after July 25, 2019, and detailing Defendants Tarin and Doll's involvement as it related to directing the movements of undocumented alien workers. (*See, e.g.,* Doc. 497, Def. Exh. G, Affidavit at ¶¶ 29-30, 35-36, 41-42, 43-44, 45-46,[4] 49, 52, 55) Defendants have failed to meet the rigorous standard to merit a *Franks* hearing.

---

[4]The WT-9 wiretap affidavit contains two paragraphs numbered "46." The paragraph "46" referenced here begins on page 46 of the affidavit.

5

Because Defendants failed to meet the first requirement for entitlement to a *Franks* hearing, no further analysis is necessary. Even if Defendants had been able to satisfy such standard, however, the WT-9 affidavit still establishes probable cause. The probable cause requirement for issuance of a wiretap is linked to the Fourth Amendment. *United States v. Thompson*, 690 F.3d 977, 984 (8th Cir. 2012). "Thus, to grant an application for a wiretap, district courts must make a 'practical, common-sense decision whether,' considering the 'totality-of-the-circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id*. at 985 (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)).

The Court initially notes that the language in the two paragraphs (18 and 66) of the 107-paragraph WT-9 wiretap affidavit challenged by Defendants are not even located within the probable cause portion of the affidavit. As a result, even if the challenged language were stricken from the WT-9 affidavit, the entire probable cause section remains. (*See* Doc. 497, Def. Exh. G, Affidavit ¶¶ 20-55) The totality of these allegations establish probable cause that evidence of the "Target Offenses" would be found on Target Telephones 4 and 5. Defendants have, accordingly, failed to make the requisite substantial preliminary showing for a *Franks* hearing.

### III. CONCLUSION

For the above-stated reasons, it is

RECOMMENDED that the Court, after making an independent review of the record and the applicable law, enter an order denying Defendants' request for a *Franks* hearing.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has fourteen days from the date of this report and recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections

may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                                       /s/ *Jill A. Morris*
                                            JILL A. MORRIS
                            UNITED STATES MAGISTRATE JUDGE